**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

DELWRICK D. COLEMAN,
ADC #656538                                                                                                     PLAINTIFF

2:13CV00131-JLH-JTK

DOUGLAS LOCKHART, et al.                                                                            DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District

1

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.     Introduction

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 48), and Plaintiff's Motion for Summary Judgment (Doc. No. 51). Plaintiff's Motion is construed as his Response to Defendants' Motion, and Defendants filed a Response to Plaintiff's Motion (Doc. No. 52).

Plaintiff Delwrick Coleman is a state inmate incarcerated at the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC). He filed this action pursuant to 42 U.S.C. § 1983, alleging excessive force against Defendants Lockhart and Eldridge, and a state law tort claim of assault and battery against Defendant Lockhart.[1] He asks for declaratory and monetary relief.

### II.    Complaint

According to Plaintiff's Complaint, Defendants initiated a "hostile and vulgar verbal

---

[1] This Court dismissed Plaintiff's false disciplinary, grievance, and disciplinary appeal allegations, together with Defendants Williams, Burl, Doe, and May, on November 1, 2013 (Doc. No. 11).

confrontation" with him early in the morning of April 22, 2012. (Doc. No. 2, p. 3.) Later that morning, Eldridge yelled into Plaintiff's cell for him to remove a blanket which he had hung from the bars of his cell. (Id.) When Plaintiff refused, because he needed the blanket to block light which contributed to migraine headaches, Eldridge called for backup and Lockhart responded. (Id.) Eldridge also falsely told Lockhart that Plaintiff had a noose tied around his neck and tried to tie it to the vent. (Id.)

Lockhart then removed the blanket from the bars and Plaintiff jumped down off the sink where he was standing in order to pick up his blanket. (Id., p. 4.) When Lockhart ordered Plaintiff not to put the blanket back up on the cell bars, Coleman verbally responded, and the two argued. (Id.) Lockhart pulled out his can of mace and sprayed Plaintiff several times, in violation of ADC policy which requires a minimum amount of force only when an inmate threatens bodily harm to himself or others. (Id.) Plaintiff claims the used of force was not justified and was excessive, because he did not threaten anyone, was not ordered to produce an item, and was not ordered to relocate. (Id.)

Another officer (Lt. Lane) arrived, and ordered Plaintiff restrained. (Id.) Although Plaintiff refused the first order, he complied with a second order after Lt. Lane obtained more mace and another officer arrived with a video camera. (Id., p. 5.) He then was taken to the shower to be decontaminated. (Id.) Plaintiff complains that Lockhart failed to notify mental health, which its required when someone is caught in possession of a "noose." (Id.)

According to the disciplinary charge written by Defendant Lockhart, when he arrived to Plaintiff's cell, a blanket was covering the cell door, and Plaintiff was standing on top of the sink. (Id., p. 6.) Lockhart then pulled the blanket off the bars and Plaintiff jumped down from the sink

3

and picked up the blanket. (Id.) When Lockhart ordered Plaintiff not to put the blanket back over the bars, Plaintiff stated, "F*** you nigga, you think that you are tough." (Id.) When Lockhart removed his chemical agent from his pouch, Plaintiff stated, "what are you going to do with that?" and reached for a Styrofoam cup filled with a liquid substance. (Id.) Lockhart then gave inmate a one-two second burst of chemical agent. (Id.)

Plaintiff alleges in his Complaint that according to Lockhart's version of the facts, it was not appropriate for him to remove the chemical spray in response to an insulting comment, or to spray Plaintiff without any warning. (Id.) Lockhart "obviously did not consider that the plaintiff might have simply been attempting to get a drink of water." (Id., p. 7.)

Plaintiff then denies that the cup or the noose existed, or that confiscation forms or photos of either existed. (Id., p. 8.) Plaintiff later was convicted of the disciplinary charges, which were affirmed on appeal. (Id., pp. 8-10.)

## III. Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth

specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Failure to Exhaust

#### 1. Defendants' Motion

Defendants first state that Defendant Eldridge should be dismissed based on Plaintiff's failure to exhaust his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. In support, Defendants present the Affidavit of Barbara Williams, who is the ADC Inmate Grievance Supervisor (Doc. No.48-5). She notes that the inmate grievance policy in effect at the time of the incident, Administrative Directive (AD)10-32, requires inmates to file an informal resolution, a formal grievance, and a grievance appeal in order to exhaust remedies. (Id.) In addition, the policy requires the inmates to "specifically name each individual involved....Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (Id.) After reviewing Plaintiff's file, Ms. Williams states Plaintiff did file a grievance about the April 22, 2012 incident (EAM 12-01958), but named only Douglas Lockhart and did not name or refer to Steve Eldridge. (Id., p. 2.)

Defendants also state that the grievance policy in effect at the time of the incident specifically states, "Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit..." (Doc. No. 48-5, p. 21.) In addition, they cite Jones v. Bock, where the United States Supreme Court

held that the PLRA exhaustion procedure requires inmates to complete the grievance process specified by their prison policy prior to filing a lawsuit. 549 U.S. 199, 218 (2007). Based on these requirements, Defendants state that Plaintiff's complaint against Eldridge should be dismissed for failure to exhaust his administrative remedies.

### 2. Plaintiff's Response/Motion

In his Response/Motion (Doc. No. 51), Plaintiff argues the merits of his claim against Defendant Lockhart and does not address the exhaustion defense of Defendant Eldridge.

### 3. Analysis

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000). In Johnson v. Jones, the Court held that "[u]nder the plain language of

section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original).   Finally, in Jones v. Bock, the Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  549 U.S. at 218.

According to the Affidavit of Barbara Williams, Plaintiff filed one grievance on April 25, 2012, complaining about being sprayed by Defendant Lockhart on April 22, 2012. (Doc. No. 48-5, pp. 2, 33-36.)   In Jones v. Hobbs, the court upheld the dismissal of two defendants from inmate Jones' complaint for failure to exhaust, finding that he did not name them in his grievance papers, "as required by the grievance policy of the Arkansas Department of Correction."  5:08CV00233-SWW, (No. 12-2002, 8th Cir. January 22, 2013).  Having reviewed the grievance filed by Plaintiff Coleman, the Court finds that he did not name, refer to, or otherwise identify Defendant Eldridge as involved in the incident; therefore, the Court finds he should be dismissed without prejudice, for failure to exhaust, as required by the ADC grievance procedure (Doc. No. 48-5, pp. 4-32), and the PLRA.

      **B.**     **Qualified Immunity**

           **1.**     **Defendants' Motion**

Defendant Lockhart states he is entitled to qualified immunity from liability.  Qualified immunity protects officials who act in an objectively reasonable manner.  It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether a defendant is entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

In order to support an excessive force claim against Defendant, Plaintiff must show that he did not act "in a good faith effort to maintain or restore discipline," but rather, acted "maliciously and sadistically for the very purpose of causing harm." Arnold v. Groose, 109 F.3d 1292, 1298 (8th Cir. 1997), quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986). In analyzing a use of force claim, Defendants state the courts have considered "whether there was an objective need for force,

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. at 236).

8

the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response, and the extent of the inmate's injuries." Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006). Defendants also rely on Jones v. Shields, where the Court held that the use of pepper spray on a noncompliant inmate did not violate the inmates' Eighth Amendment rights. 207 F.3d 491, 491 (8th Cir. 2000).

In this case, Defendant Lockhart states that Plaintiff admitted hanging a blanket across the bars of his cell, in violation of prison policy, and then refused an order to take it down in violation of policy. See Lockhart affidavit, Doc. No. 48-3. He also believed, based on his past experience with inmates and Plaintiff's behavior, that Plaintiff was reaching for the cup to "dash" him with an unknown liquid substance. (Id.) In response to Plaintiff's action, Lockhart states he sprayed Plaintiff with a one-to-two second burst of pepper spray, noting that Plaintiff is considerably taller and heavier than Lockhart. (Id. p. 2.) In addition, after Plaintiff was sprayed, he remained non-compliant and refused an initial order to submit to handcuffs. (Id.) Based on this sequence of events, Lockhart states that the amount of force he used was reasonable, and that a reasonable official would not have known that such an action violated Plaintiff's constitutional rights.

**2.     Plaintiff's Response/Motion**

Plaintiff relies on the allegations set forth in his Complaint, stating he never threatened himself or Defendant, and that Defendant violated ADC policy by spraying him without warning. (Doc. No. 51, p. 3.) As a result of the spraying, Plaintiff states he suffered from irritating and itching skin, shortness of breath, chest pains, and lack of sleep. (Id., p. 4.)

**3.     Analysis**

As noted above, an officer who acts in an objectively reasonable manner, and whose conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known," is entitled to qualified immunity from liability. Harlow v. Fitzgerald, 457 U.S. at 818. In this case, the Court must determine whether the facts alleged or shown by Plaintiff Coleman, construed in the light most favorable to him, establish a violation of a constitutional or statutory right, and whether that right was so clearly established that a reasonable official (Defendant Lockhart) would have known that his actions were unlawful. Pearson v. Callahan, 555 U.S. at 232.

In his deposition testimony, Plaintiff stated that on April 22, 2012, Defendant Eldridge first came by his cell about 6:30 a.m. and told Plaintiff to take down the blanket he had draped over the light in his cell. (Doc. No. 48-1, p. 3.) He admitted in the deposition that he was not permitted to place the blanket there, because it posed a fire hazard, yet ignored Eldridge's order and his knocking on the door of Plaintiff's cell. (Id., p. 5.) Other officers (rovers) arrived to his cell shortly thereafter, and Lockhart called out to Plaintiff to take down the blanket and Plaintiff refused. (Id., p. 4.) When Lockhart took down the blanket, Plaintiff picked it up, and Lockhart ordered him not to put it back up. (Id.) Plaintiff then said, "f*** you, nigger," and Lockhart removed the chemical agent. (Id.) As Plaintiff stepped back away from the bars, Lockhart sprayed him and then closed the door. (Id.) Lockhart then opened the door, ordered Plaintiff to catch the cuffs, and Plaintiff refused. (Id.) Lockhart called for backup and more officers arrived and Plaintiff eventually submitted to the cuffs and was taken to the shower. (Id).

Plaintiff admitted that he was standing on his sink when Eldridge first came by his cell, in order to talk through the vent to another inmate, but denied having a noose. (Id., pp. 4-5.) Plaintiff is inconsistent, however, when relating the subject of the cup. In his Complaint, he stated "there was

no cup with liquid," but also appeared to admit that there was a cup with liquid by stating, "[i]n defendant Lockhart's version of the facts, he obviously did not consider that the plaintiff might have simply been attempting to get a drink of water." (Doc. No. 2, p. 7.) However, in his deposition testimony, he admitted having a Styrofoam cup on the table in his cell, but stated it was empty. (Doc. No. 48-1, p.6.) In his Response to the Defendants' Motion, however, he does not dispute Defendant Lockhart's statement in his affidavit that Plaintiff started to reach for a cup on the table, leading Lockhart to believe, "based on my past experiences with inmates and Coleman's non-compliant and aggressive behavior, that Coleman was getting ready to 'dash' me with whatever was in the cup." (Doc. No. 48-3, pp. 1-2.)

Inmates have a clearly-established Eighth Amendment right "to be free from unnecessary and wanton infliction of pain at the hands of correctional officers." Jones v. Shields, 207 F.3d at 495. However, the "prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. In this particular case, accepting Plaintiff's version of the facts as true, the Court finds that Lockhart did not act unreasonably or in violation of clearly-established Constitutional law when he sprayed Plaintiff after he refused several direct orders and moved in a way that a reasonable officer may have construed to be threatening. Plaintiff admitted that he violated prison rules by placing the blanket over the light and bars of his cell, and he admitted refusing direct orders by several officers to remove it. He also admitted using profanity when addressing Defendant Lockhart, and admitted having a cup near him in his cell.

These facts are similar to those in Jones, where the Plaintiff testified that he refused an order to mop the floor, and questioned a second order to proceed to a location in the hall. 207 F.3d at 493.

11

However, he claimed Jones improperly sprayed him when he was obeying his order to return to his cell. Id., Officer Jones' version of the facts differed, claiming Plaintiff objected profanely to Jones' order to return to his cell, and became argumentative and loud. Id. The Eighth Circuit held that viewing the evidence in the inmate's favor, the administration of capstun resulted in de minimis injury, and the type of force which was used was not "repugnant to the conscience of mankind." 207 F.3d at 495.³ Furthermore, "summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy." 207 F.3d at 496, quoting Hickey v. Reeder, 12 F.3d 754, 757, 759 (8th Cir. 1993).

Therefore, viewing the facts as presented by the Plaintiff, the Court finds as a matter of law that Defendant's actions in spraying Plaintiff were not unreasonable, were in the interests of preserving security, order, and the possible safety of Defendant, and not violative of Plaintiff's constitutional rights. Furthermore, any allegations by Plaintiff that Defendant Lockhart violated ADC policy by failing to issue a warning prior to spraying him with mace do not support a Constitutional claim for relief. "[T]he mere violation of a state law or rule does not constitute a federal due process violation." Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1992). Therefore, the Court finds Defendant Lockhart is entitled to qualified immunity.

### C. State Law Claims

---

³This Court is cognizant of the United States Supreme Court's subsequent holding in Wilkins v. Gaddy, that the evidence of only de minimis injury does not necessarily foreclose an excessive force claim. 559 U.S. 34 (2010). However, that Court noted that the absence of serious injury is not irrelevant, and the extent of the injury can provide some indication of the amount of force used. Id. at 37. The Court also stated that a court's analysis should "be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries," Id. at 39, quoting Smith v. Mensinger, 293 F.3d 641, 648-9 (3d Cir. 2002). Finally, the Court stated that Plaintiff must prove that the assault "was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" Id. at 40, quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Given the Court's decision to grant Defendants' Summary Judgment Motion on the Constitutional claims raised by Plaintiff, the Court declines to exercise jurisdiction over his state law claims against Defendant Lockhart for assault and battery. <u>McLaurin v. Prater</u>, 39 F.3d 982, 984-94 (8th Cir. 1994).[4]

## III. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 48) be GRANTED;

2. Plaintiff's Motion for Summary Judgment (Doc. No. 51) be DENIED;

3. Plaintiff's claim against Defendant Eldridge be DISMISSED without prejudice, for failure to exhaust;

4. Plaintiff's Constitutional claims against Defendant Lockhart be DISMISSED with prejudice;

5. Plaintiff's state law claims against Defendant Lockhart be DISMISSED without prejudice.

IT IS SO ORDERED this 13th day of August, 2014.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

[4] Defendants also point out in their Motion that Plaintiff's state law claims are time-barred, based on a one-year statute of limitations for assault and battery actions. ARK. CODE ANN. Sect. 16-56-104(2)(A).